IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FANNIE BENALLY,

    Plaintiff,

v.

CORLEY NISSAN LLC,
NISSAN MOTOR ACCEPTANCE CORP., and
PLATTE RIVER INS. CO,

    Defendants.

## COMPLAINT FOR DAMAGES

1. Using information it had received from Plaintiff Fannie Benally in a prior vehicle sale, Defendant Corley Nissan LLC created an entirely fake second car sale to Ms. Benally, including fraudulent documents and forged signatures, to allow it to sell a car to Ms. Benally's brother-in-law Benny Benally.

2. In order to get the deal financed, Corley made numerous misrepresentations about Ms. Benally to Nissan Motor Acceptance Corp.

3. Ms. Benally brings claims against Corley for violations of the federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq*. ("TILA") and the New Mexico Unfair Practices Act, N.M.S.A. 1978 § 57-12-1 *et seq*. ("UPA"), and for fraud.

### Jurisdiction and Venue

4. This Court has jurisdiction under the TILA, 15 U.S.C. § 1640(e), and generally for federal claims pursuant to 28 U.S.C. §§ 1331, 1337 and 2201.

5. The Court has supplemental jurisdiction over the remaining state claims under 28 U.S.C. § 1367, because they arise out of the same agreements as the federal claims.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because the parties are located in this district and the events giving rise to this complaint occurred within the district.

## Parties

7. Fannie Benally ("Mrs. Benally") is a seventy-five-year-old woman who lives on the Navajo Nation near Shiprock, New Mexico. She is a "consumer" as defined by the TILA, 15 U.S.C. §1602(i) and Regulation Z, 12 C.F.R. §1026.2(a)(11).

8. Defendant Corley Nissan, LLC ("Corley") is a New Mexico corporation and licensed car dealership. Corley operates a new and used car dealership in Gallup, New Mexico. It is a "creditor," as defined in the TILA, 15 U.S.C. §1602(g), and Regulation Z, 12 C.F.R §1026.2(a)(17).

9. Defendant Nissan Motor Acceptance Corp. ("Nissan") is a foreign corporation registered to do business in New Mexico. Nissan purchases financing contracts from the sale of motor vehicles.

10. Defendant Platte River Insurance Co. ("Platte") is a foreign corporation that provides auto dealer surety bonds for New Mexico auto dealers. It provided the surety bond necessary to license Corley as an auto dealer, pursuant to NMSA 1978 § 66-4-7 during the time period relevant to this transaction.

11. Sureties of auto dealer consumer protection bonds – here Platte – are liable for any actual damages for fraud awarded against their principal dealers – here, Corley. NMSA 1978 § 66-4-7(B) ("bond shall be payable . . . of any loss, damage and expense sustained by the purchaser or his vendees, or both, by reason of . . . any fraudulent misrepresentations"); *McAlpine v. Zangara Dodge, Inc.*, 2008-NMCA-64, 144 N.M. 90, 183 P.3d 975 (auto

dealer consumer protection surety bond statute covers fraud by the dealer).

12. Sureties of auto dealer consumer protection bonds – here, Platte – are liable for any attorney fees and costs expended by a consumer in prosecuting a fraud claim against a dealer – here, Corley. *See Yoakum v. Western Casualty and Surety Company*, 75 N.M. 531, 532-33, 407 P.2d 367, 369 (N.M. 1965).

### Facts

13. On or about October 19, 2013, Chris "T-Bone" Williams, an employee of Corley, called Ms. Benally at her home in Shiprock, New Mexico.

14. Mr. Williams told Ms. Benally that her brother-in-law, Benny Benally ("Benny"), was at the dealership and needed her help to buy a new 2014 Nissan Altima ("the Vehicle").

15. Mr. Williams asked Ms. Benally if she would be Benny's "co-signer" so that he could buy the Vehicle.

16. Ms. Benally did not understand what it meant to "co-sign" for a car, but she told Mr. Williams that she was willing to help.

17. A few hours later, Benny arrived in Shiprock and told Ms. Benally that Corley needed a copy of her driver's license.

18. Benny drove Ms. Benally to the Shiprock Chapterhouse, where they made a copy of Ms. Benally's driver's license. Benny took the photocopy and returned to Corley without Ms. Benally.

19. Ms. Benally did not hear anything else about the transaction.

20. Unbeknownst to Ms. Benally, Corley misrepresented on the sales paperwork, including a Retail Installment Contract ("the RIC"), that Ms. Benally was the sole purchaser of the Vehicle. *See* Exhibit A (the RIC).

21. Corley used Ms. Benally's name because Benny was not able to buy the Vehicle. Without Ms. Benally's credit, Corley would not have been able to make the sale and profit from it.

22. To fill in the sales paperwork, Corley used information it had obtained from Ms. Benally during a previous car deal.

23. The sales price of the Vehicle was $25,978.36.

24. Corley also included GAP insurance and an extended service contract in the RIC, for a total cost of $2,500.

25. Corley misrepresented on the RIC that Ms. Benally was trading in her 2012 Nissan Titan ("the Titan") as part of the deal, and that Corley would pay off that account.

26. Corley misrepresented on the RIC that Ms. Benally made a cash down payment of $1,000.00.

27. Corley financed the balance left owing on the RIC.

28. Under the terms of the RIC, Ms. Benally has to make 72 monthly payments of $564.94.

29. Ms. Benally lives on a fixed income of less than $900 per month.

30. To obtain financing, Corley fraudulently applied to Nissan on Ms. Benally's behalf.

31. Corley forged Ms. Benally's signature on the sales paperwork, including the RIC.

32. The RIC contained the disclosures required by the TILA to be provided to the consumer before credit is extended. 15 U.S.C. § 1638(b)(1).

33. Corley did not provide Ms. Benally with any of the sales paperwork, including the RIC.

34. Corley did not take the Titan, and never paid off the loan for the Titan.

35. Once all of the sales documents were forged, Corley gave the Vehicle to Benny.

36. Shortly after the sale of the Vehicle, Corley assigned the financing contract to Nissan.

37. The financing contract that Nissan purchased includes this language:

    Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of the goods or services obtained pursuant hereto or with the proceeds hereof. Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder.

38. A few weeks after the sale of the Vehicle, Ms. Benally was surprised to begin receiving letters from Nissan. Before long, the letters stated that payments had been missed.

39. Ms. Benally called Mr. Williams at Corley to talk about the Vehicle.

40. Mr. Williams told Ms. Benally that Benny was behind on payments and that she should return the Vehicle.

41. Ms. Benally demanded that Benny return the Vehicle to her, and when he did, Ms. Benally dropped it off at Corley.

42. Mr. Williams called to tell Ms. Benally that Corley would not accept the Vehicle.

43. Ms. Benally picked up the Vehicle, and shortly thereafter, on or about February 3, 2014, Ms. Benally arranged for Nissan to repossess the Vehicle.

44. Nissan subsequently sold the Vehicle, and wrote to Ms. Benally demanding that she pay the $12,060.40 deficiency.

45. Nissan reported Ms. Benally's alleged delinquency on the RIC to the three major credit reporting agencies, Experian, Equifax, and Trans Union.

46. Ms. Benally was damaged by Corley's actions, including being made liable for a fraudulent debt, damage to her credit reputation, aggravation, frustration, and inconvenience.

### First Claim for Relief: Violation of the TILA

47. By failing to provide any required disclosures to Ms. Benally, Corley violated the TILA,

15 U.S.C. § 1632 and 1638.

48. Ms. Benally is entitled to actual and statutory damages plus costs and reasonable attorney fees, as provided in 15 U.S.C. § 1640.

## Second Claim for Relief: Fraud

49. Corley misrepresented and omitted material facts, as set forth above, including but not limited to, stating that Ms. Benally would be "helping" Benny to buy the Vehicle, failing to obtain Ms. Benally's consent for any part of the transaction, failing to state that Ms. Benally would be the sole purchaser of the Vehicle, and failing to disclose that it was misrepresenting her financial condition to Nissan.

50. Corley knew such representations to be false, or it made those representations recklessly, or Corley had no reasonable grounds for believing those representations were true. Corley also knew that its omissions were material and important.

51. Corley intended to deceive Ms. Benally and intended that she would rely upon its representations, which she did, to her detriment, suffering damages.

52. Corley's conduct was malicious, willful, reckless, wanton, fraudulent, and in bad faith.

## Third Claim for Relief: Violation of the UPA

53. The foregoing transaction occurred in the regular course of Corley's trade or commerce, and its actions are subject to the UPA.

54. The foregoing actions of the dealer constitute unfair or deceptive trade practices, within the meaning of the UPA, NMSA 1978 §57-12-2(D).

55. Corley willfully engaged in these unlawful trade practices.

56. As a result of these violations, Ms. Benally is entitled to recover the greater of actual or statutory damages, trebled.

WHEREFORE, Plaintiff request that this Court grant the following relief:

A.      Award actual and statutory damages for violation of the TILA;

B.      Award actual damages and punitive damages for fraud;

C.      Award the greater of actual or statutory damages, trebled, for violations of the UPA;

D.      Award reasonable attorney's fees and costs; and

E.      Grant such other relief as it deems just and proper.

Respectfully submitted,

*/s/Nicholas Mattison*
NICHOLAS MATTISON
FEFERMAN & WARREN, Attorneys for Plaintiff
300 Central Ave., SW, Suite 2000 West
Albuquerque, NM 87102
(505) 243-7773
(505) 243-6663